UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JIN ACKERMAN,

                        Plaintiff,

     v.

GITTERE, *et al.*,

                      Defendants.

Case No. 3:20-cv-00337-MMD-CSD

ORDER

I.    **SUMMARY**

    *Pro se* Plaintiff Jin Ackerman, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP"), brings this action under 42 U.S.C. § 1983 against Defendants William Gittere, William Reubart, Steffen Moskoff, Dennis Homan, James Dzurenda, Tasheena Cooke, Charles Daniels, and Brian Williams (collectively, "Defendants"). (ECF No. 45 ("SAC").) Before the Court is a Report and Recommendation ("R&R") of United States Magistrate Craig S. Denney (ECF No. 87), recommending the Court deny Plaintiff's motion for partial summary judgment (ECF No. 61 ("Plaintiff's Motion")) and grant in part, and deny in part, Defendants' motion for summary judgment (ECF No. 70 ("Defendants' Motion")). Plaintiff and Defendants timely filed objections to the R&R.[1] (ECF Nos. 88 ("Plaintiff's Objection"), 92 ("Defendants' Objection").) Because the Court disagrees with one of Judge Denney's recommendations but otherwise agrees with Judge Denney, the Court will adopt the R&R in part and will reject it in part. Accordingly, the Court will deny Plaintiff's Motion, and will grant in part, and deny in part, Defendants' Motion.

---

[1]Defendants filed a response to Plaintiff's Objection (ECF No. 91), and Plaintiff filed a response to Defendants' Objection (ECF No. 93).

## II.     BACKGROUND

The Court incorporates by reference Judge Denney's recitation of Plaintiff's allegations in the SAC, provided in the R&R, which the Court adopts. (ECF No. 87 at 1-5, 7-15, 17-18.)

## III.    DISCUSSION

### A.      Judge Denney's Recommendations

Plaintiff moves for summary judgment on two of his three causes of action—Fourteenth Amendment procedural due process claims against Moskoff, Homan, Reubart, and Gittere only,[2] and an equal protection claim against Reubart and Gittere.[3] (ECF No. 61; *see also* ECF No. 87 at 21 n.5.) Defendants move for summary judgment on all of Plaintiff's claims. (ECF No. 70.) Overall, Judge Denney recommends (1) denying Plaintiff's Motion, and (2) granting in part, and denying in part, Defendants' Motion. (ECF No. 87 at 41-43.)

Plaintiff bases his procedural due process claims on the following alleged actions by Defendants: (1) Moskoff's untimely amendment to Plaintiff's disciplinary charges; (2) Moskoff's failures to serve Plaintiff an amended Notice of Charges and to conduct a preliminary hearing for Plaintiff's battery charge; (3) Homan's decision to carry on with Plaintiff's formal disciplinary hearing even though Plaintiff had not been given the required 24-hour written notice of his amended rioting charge; (4) Homan's denial of Plaintiff's request to call two witnesses during the disciplinary hearing; (5) Homan's finding that Plaintiff was guilty on the rioting charge and related imposition of sanctions, despite not being supported by the evidence; (6) Homan's amendment of Plaintiff's charge—from battery to rioting, a "lateral" charge—during the disciplinary hearing; (7) Reubart and Gittere's alleged decision to indefinitely segregate and confine Plaintiff in the prison's

---

[2]Plaintiff does not seek summary judgment on his procedural due process claims against Defendants Cooke, Dzurenda, and Williams.

[3]Plaintiff only seeks summary judgment on his equal protection claim against Reubart and Gittere, not Daniels. (*See* ECF No. 87 at 2-3, 36 n.9.)

1  Behavior Modification Unit ("BMU" or "Administrative Segregation") after Plaintiff's

2  disciplinary hearing and appeal; (8) Cooke and Dzurenda's involvement in the decision to

3  keep Plaintiff confined within the BMU; and (9) Williams's denial of Plaintiff's restitution

4  hearing and independent review of the improperly imposed restitution. (ECF No. 87 at 21-

5  34.)

6       Judge Denney recommends granting summary judgment for Defendants on the

7  due process claims against Moskoff (based on allegations of untimely charge

8  amendments), Homan (based on the alleged refusal to allow witnesses and

9  determinations of guilt and sanctions), Cooke and Dzurenda, and Williams. Otherwise,

10 Judge Denney recommends denial of summary judgment.[4] In addition to challenging the

11 merits, Defendants raise a qualified immunity defense against all of Plaintiff's due process

12 claims. (ECF Nos. 70 at 22-24; 87 at 40-41.) Judge Denney also recommends denying

13 summary judgment as to this defense.

14      As for Plaintiff's Fourteenth Amendment equal protection claim, Judge Denney

15 finds that Defendants' exhaustion defense fails because Defendants effectively rendered

16 administrative remedies unavailable to Plaintiff. (ECF No. 87 at 18-19.) He goes on to

17 recommend denying summary judgment as to this claim on the merits.[5] (*Id.* at 19, 39.)

18      As for Plaintiff's Eighth Amendment failure-to-protect claim, Judge Denney again

19 finds that Defendants' exhaustion defense fails. (*Id.* at 20.) Even so, Judge Denney

20 recommends granting summary judgment for Defendants on the merits of the failure-to-

21 protect claim. (*Id.* at 36.)

22

23

24      [4]Judge Denney also recommends denying Plaintiff's Motion on the due process claims to the extent Plaintiff alleges that Moskoff and Homan each failed to be impartial

25 hearing officers. (ECF No. 87 at 21, 23.) Plaintiff's SAC, Judge Denney explains, does not include allegations that either Moskoff or Homan violated Plaintiff's due process rights

26 because they were not impartial, and the screening order did not allow Plaintiff to proceed with these claims (*Id.* at 21-23.)

27

28      [5]Because Plaintiff only seeks summary judgment on his equal protection claim against Reubart and Gittere, Judge Denney also recommends denying Plaintiff's Motion on the equal protection claim against Daniels. (ECF No. 87 at 36 n.9.)

1

**B.     Recommendations without Objections**

2   The Court "may accept, reject, or modify, in whole or in part, the findings or

3   recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party

4   fails to object to a magistrate judge's recommendation, the Court is not required to conduct

5   "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*,

6   474 U.S. 140, 149 (1985); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1116

7   (9th Cir. 2003) ("De novo review of the magistrate judges' findings and recommendations

8   is required if, but *only* if, one or both parties file objections to the findings and

9   recommendations.") (emphasis in original); Fed. R. Civ. P. 72, Advisory Committee Notes

10  (1983) (providing that the Court "need only satisfy itself that there is no clear error on the

11  face of the record in order to accept the recommendation.").

12  To the extent neither party objects to Judge Denney's recommendations, the Court

13  is satisfied that there is no clear error on the face of the record and finds good cause to

14  adopt the R&R. Accordingly, the Court accepts Judge Denney's R&R on the following

15  claims: (1) due process claim against Moskoff based on his amendment of Plaintiff's

16  disciplinary charge beyond the 15-day time limit set forth in NDOC's Administrative

17  Regulations ("AR" or "Regulations"); (2) due process claim against Moskoff based on his

18  alleged failure to be an impartial hearing officer; (3) due process claim against Homan

19  based on his denial of Plaintiff's request to call two witnesses during his disciplinary

20  hearing; (4) due process claim against Homan based on his alleged failure to be an

21  impartial hearing officer; (5) due process claim against Homan based on his finding of guilt

22  and imposition of sanctions against Plaintiff; (6) due process claim against Dzurenda

23  only—not Cooke—based on ESP officials' decision to place Plaintiff in Administrative

24  Segregation; (7) due process claim against any Defendant *except* Williams based on the

25  alleged denial of Plaintiff's restitution hearing and independent review of his restitution

26  charge; (8) equal protection claim against Daniels; and (9) equal protection claim against

27  Reubart and Gittere to the extent Defendants argue that their *initial* racial segregation

28  measures in January 2020 were narrowly tailored to further the compelling government

4

1   interest of prison safety and security. The Court also accepts the R&R as to the exhaustion

2   defense for Plaintiff's Eighth Amendment failure-to-protect claim.

3           **C.      Recommendations with Objections**

4           Most of Judge Denney's recommendations face objections by one or both parties.

5   In gist, Defendants object to every recommendation to deny their Motion. This includes

6   recommendations on four of Plaintiff's nine due process claims, Plaintiff's equal protection

7   claim, as well as Defendants' exhaustion and qualified immunity defenses. (*See generally*

8   ECF No. 92.) Plaintiff, on the other hand, objects to Judge Denney's recommendations

9   that the Court (1) deny Plaintiff's Motion on two of his due process claims—specifically

10  relating to Defendants Cooke and Williams—and (2) grant Defendants' Motion as to the

11  merits of Plaintiff's failure-to-protect claim against Gittere and Dzurenda.[6] (*See generally*

12  ECF No. 88.)

13          Where a party timely objects to a magistrate judge's report and recommendation,

14  the Court must "make a de novo determination of those portions of the [report and

15  recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The Court's review

16  is thus de novo because Plaintiff and Defendants have filed objections. (ECF Nos. 88, 92.)

17          **1.      Plaintiff's Compliance with Local Rule IB 3-2**

18          As a preliminary matter, Defendants argue that Plaintiff's Objection must be

19  overruled simply because he (1) fails to support his Objection with points and authorities

20

21

22          [6]In his Objection, Plaintiff suggests that the prison law library erroneously e-filed
    one of his exhibits—Exhibit 16—in support of his Motion. (ECF Nos. 61-2 at 52-55; 88 at
23  2.) Although Plaintiff explicitly labeled the exhibit as "double-sided" for e-filing purposes,
    "the Law Library noted [Plaintiff's] filing was containing less pages than [he] had hand-
24  counted, but [the law library] didn't state why there was a discrepancy." (ECF No. 88 at 2.)
    Indeed, only odd-numbered pages appear in Exhibit 16. (ECF No. 61-2 at 52-55.) Thus,
25  Plaintiff explains, "[t]hat may be why the Magistrate Judge wasn't able to review my
    evidence against [Defendant] Cooke." (ECF No. 88 at 2.) Construing Plaintiff's argument
26  as a request for judicial notice, the Court thus takes judicial notice of Plaintiff's Offender
    Information Summary (*Id.* at 7-14.)—a record of NDOC—in its entirety. *See* Fed. R. Evid.
27  201; *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th
    Cir. 2004) ("Under Federal Rule of Evidence 201, we may take judicial notice of the
28  records of state agencies and other undisputed matters of public record.").

1     as required under Local Rule IB 3-2[7] and (2) "merely rephrases his argument[s] and

2     allegations from previous filings in this case." (ECF No. 91 at 5.) The Court finds

3     Defendants' arguments unpersuasive and declines to overrule Plaintiff's Objection solely

4     on this ground. While Plaintiff does not cite specific authorities (*e.g.*, caselaw, federal

5     rules) in his Objection, he cites several points in the evidentiary record to support specific

6     written objections. (*See generally* ECF No. 88.) Moreover, unlike Local Rule 7-2, where a

7     failure to support an opposition to a motion with points and authorities constitutes consent

8     to the granting of the motion, Local Rule IB 3-2 does not require the Court to construe an

9     objecting party's failure to file supporting points and authorities as consent to the overruling

10    of the objection. *Compare* LR 7-2(d) ("The failure of an opposing party to file points and

11    authorities in response to any motion . . . constitutes a consent to the granting of the

12    motion.") *with* LR IB 3-2 ("Any party wishing to object to a magistrate judge's finding and

13    recommendations . . . must file and serve specific written objections with supporting points

14    and authorities."). Thus, a failure to fully comply with Local Rule IB 3-2, alone, does not

15    justify overruling Plaintiff's Objection in its entirety. *See Thomas v. Ponder*, 611 F.3d 1144,

16    1150 (9th Cir. 2010) ("We have, therefore, held consistently that courts should construe

17    liberally motion papers and pleadings filed by pro se inmates and should avoid applying

18    summary judgment rules strictly.") (citation omitted).

19        Further, and as further explained below, the Court disagrees with Defendants'

20    argument that Plaintiff merely rehashes arguments and points already raised in his

21    summary judgment papers.

22                **2.    Due Process: Moskoff**

23        Defendants object to Judge Denney's finding that a genuine dispute of material fact

24    exists as to whether Moskoff served Plaintiff the amended Notice of Charges and

25    conducted a preliminary hearing. (ECF No. 87 at 23.) However, the basis of this objection

26    is unclear. The gist of Defendants' argument appears to be twofold: (1) this claim fails

27

28        [7]Under Local Rule IB 3-2, an objecting party "must file and serve specific written
objections with supporting points and authorities." LR IB 3-2(a).

because Plaintiff has no liberty interest in being served advance notice of disciplinary charges or having a preliminary hearing—whether that interest arises from the Due Process Clause itself or is state-created—and (2) Plaintiff impliedly waived his right to 24-hour notice for his amended battery charge. (ECF No. 92 at 12-14.) Upon de novo review, and for the reasons explained below, the Court agrees with Judge Denney and overrules Defendants' Objection.

Plaintiff alleges that on November 9, 2019, Moskoff, a preliminary hearing officer ("PHO"), entered Plaintiff's housing unit unaccompanied, served multiple inmates their Notices of Charges relating to the October 13, 2019 riot incident, and left without stopping by Plaintiff's cell. (ECF No. 45 at 5.) That same day, Moskoff reviewed Plaintiff's murder charge and decided to amend it to a battery charge because Plaintiff "had no involvement" in the murder. (*Id.*) However, Moskoff never served Plaintiff an amended Notice of Charges or otherwise informed Plaintiff of this change. (*Id.*) Due to Moskoff's actions, Plaintiff did not have a preliminary hearing on the amended battery charge and had prepared a written defense for the murder charge—that is, the wrong charge. (*Id.* at 6.)

On summary judgment, Plaintiff argues that Moskoff's failure to serve Plaintiff an amended Notice of Charges and conduct a preliminary hearing for the new battery charge violated his due process rights because it "compromised" Plaintiff's ability to prepare his defense for his full disciplinary hearing. (ECF No. 61 at 6.) Defendants, on the other hand, assert that Moskoff "drafted a Summary of Hearing Officer's Inquiry and Disposition, stating that [Plaintiff] was charged with MJ3—Battery [instead of MJ16—Murder] and stating that a preliminary hearing was held on November 9, 2019." (ECF No. 70 at 4.) Judge Denney concludes that triable issues of material fact exist as to "whether Moskoff served Plaintiff with the amended notice of charges and conducted a preliminary hearing," and "whether Plaintiff waived the required 24-hour notice." (ECF No. 87 at 23.) Thus, Judge Denney recommends denying both Motions on this claim. The Court agrees with Judge Denney.

1          **a.     Service of Notice & Preliminary Hearing Requirements**

2          AR 707.1 governs NDOC's inmate disciplinary process. (ECF No. 61 at 57-94.)

3    Two subsections are relevant to this claim: 707.1.3.A and 707.1.3.B. Subsection 707.1.3.A

4    outlines the procedures for issuing and amending disciplinary charges and notifying an

5    inmate of the charges against them through a "Notice of Charges." (*Id.* at 62-64.) A PHO

6    "has the authority to 'amend' a charge, but cannot add any additional charges." (*Id.* at 63.)

7    If "a modified charge is warranted, the disciplinary process shall be halted and due process

8    for the modified charge shall be followed." (*Id.* at 64.) If amendment is warranted, the PHO

9    "shall change the charge, and the inmate shall be re-issued an amended Notice of

10   Charges." (*Id.*)

11         Subsection 707.1.3.B sets forth procedural requirements for a PHO's service of an

12   inmate's Notice of Charges and, more broadly, a preliminary hearing, also called an

13   "inquiry and disposition." (*Id.* at 64-68.) The PHO must first review the Notice of Charges

14   and may take three actions: (1) proceed with the service of the Notice of Charges; (2) refer

15   the matter back to a shift supervisor for further investigation; or (3) "[a]mend the charge, if

16   appropriate, prior to service of the Notice of Charges. Any amendment must be

17   documented." (*Id.* at 64.) "If a charge is amended, the inmate shall receive a copy of the

18   new Notice of Charges with the modified charge." (*Id.* at 65.) To properly "serve" an

19   accused inmate with a Notice of Charges, a PHO must (1) read the charge to the inmate,

20   (2) provide the inmate a copy of the Notice of Charges and "obtain the inmate's signature

21   as proof of receipt," and (4) update the record system with the date of service. (*Id.* at 65-

22   66.) Additionally, "[i]f the disciplinary offense could result in a criminal prosecution referral,

23   the inmate shall be advised of the right to remain silent"; "[t]his warning shall be made a

24   part of the record of the disciplinary hearing." (*Id.*)

25         After the PHO serves the Notice of Charges, but "[b]efore proceeding with the

26   charge as written, the [PHO] shall ensure that the inmate has had at least 24-hours prior

27   to the formal hearing to prepare for the hearing." (*Id.* at 66.) During the preliminary hearing,

28   the PHO must ask the inmate to submit a plea to each charge; an inmate's silence must

8

1    be considered a plea of "not guilty." (*Id.* at 67.) Among other questions, the PHO must ask

2    the inmate if he wants to make a statement. (*Id.*) If the inmate declines to make a

3    statement, the PHO will detail as such in the record. (*Id.*)

4           Several genuine disputes of material fact preclude summary judgment for either

5    side on this claim. First, questions exist as to whether Moskoff properly served Plaintiff an

6    amended Notice of Charge to reflect Moskoff's decision to amend Plaintiff's charge from

7    murder to battery. Defendants acknowledge, and the record shows, that Moskoff amended

8    Plaintiff's charge—modifying it from murder to battery—on November 9, 2019. (ECF Nos.

9    70 at 4; 70-1 at 10.) Importantly, Defendants do not appear to dispute that Moskoff failed

10   to serve Plaintiff an amended Notice of Charges. (ECF No. 70 at 4.) The bottom of the

11   amended Notice of Charges form reflecting Plaintiff's battery charge—dated November 9,

12   2019—has no date of service listed, and neither Plaintiff nor Moskoff's signatures appear

13   as required under the Regulations. (ECF Nos. 64 at 65; 70-1 at 10.) Defendants do not

14   explain why neither Moskoff nor Plaintiff signed the amended Notice of Charges. Further,

15   the top of the amended Notice of Charges form lists October 13, 2019, as the "date

16   charges written"—the same date as the riot incident, when Plaintiff was served the original

17   Notice of Charges for the murder charge. (ECF No. 70-1 at 10, 13.)

18          It is also unclear whether Moskoff conducted a preliminary hearing properly and

19   with adequate notice, if at all. On the "Summary of Hearing Officer's Inquiry and

20   Disposition," Moskoff noted the date and time of the preliminary hearing as November 9,

21   2019, at 12:48 PM—just four minutes after the "run date" for Plaintiff's amended Notice of

22   Charges. (*Id.* at 9-10.) Moskoff further entered Plaintiff's "not guilty" plea on the amended

23   battery charge and ultimately decided to "refer" this charge for a full disciplinary hearing.

24   (*Id.* at 9.) Besides listing "Staff Reports/Video" as evidence relied on for the preliminary

25   hearing, Moskoff offers no explanation for his decision to refer the charge. (*Id.*) Moskoff

26   also indicated on the form that Plaintiff did not waive a hearing or preparation for the

27   hearing, and that Plaintiff did not refuse to sign the summary form. (*Id.*) Yet neither Moskoff

28   nor Plaintiff signed the summary form. (*Id.*) As with the amended Notice of Charges,

1    Defendants do not explain why neither Moskoff nor Plaintiff signed the hearing summary

2    form.

3          Given this ambiguous and sometimes conflicting evidence, reasonable minds can

4    differ as to whether Moskoff violated Plaintiff's due process rights under these

5    circumstances. S*ee Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974) (requiring in part

6    that prison officials provide an inmate facing disciplinary charges with a written statement

7    at least 24 hours before the disciplinary hearing that includes the charges at issue, a

8    description of the evidence against the prisoner, and an explanation for the disciplinary

9    action taken); *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) ("When

10   prison officials limit an inmate's efforts to defend himself, they must have a legitimate

11   penological reason.") (citation omitted); *Ponte v. Real*, 471 U.S. 491, 497 (1985)

12   (suggesting that a prison official will eventually have to explain, "in a limited manner," to a

13   court her reasons for limiting an inmate's ability to defend himself in a disciplinary hearing);

14   *Serrano v. Francis*, 345 F.3d 1071, 1079-80 (9th Cir. 2003) (concluding that a hearing

15   officer violated an inmate's due process right to call witnesses because the officer "offered

16   no reason" for limiting the inmate's defense during the hearing, and because state

17   regulations nevertheless require hearing officers to document reasons for refusing the

18   inmate's request to call witnesses). Accordingly, the Court adopts the R&R and denies

19   both Motions on this claim.

20          **3.     Due Process: Homan**

21          Defendants next object to Judge Denney's finding that a triable issue of material

22   fact exists as to whether Plaintiff knowingly waived his 24-hour notice of the disciplinary

23   hearing on his amended rioting charge as required under the Regulations. (ECF Nos. 80

24   at 58-59; 87 at 23-24; 92 at 14.) Defendants contend that Plaintiff "impliedly waived his

25   right to advance notice when he proceeded with the hearing despite being asked [by

26   Homan] if he wanted to continue the hearing to another time." (ECF No. 92 at 14.) The

27   Court agrees with Judge Denney.

28

1    Plaintiff in gist argues that Homan "did not have authority to amend" Plaintiff's

2    battery charge to a rioting charge "without 24-hour notice to prepare a defense" for this

3    amended rioting charge. (ECF No. 80 at 7.) Further, Plaintiff asserts that Homan

4    improperly concluded that Plaintiff had waived his right to 24-hour notice during the

5    November 21 hearing. (*Id.*) Defendants do not dispute that Plaintiff had a right to a 24-

6    hour notice for a disciplinary hearing on the amended rioting charge; instead, they maintain

7    that Plaintiff knowingly waived this right just before his formal hearing and thus consented

8    to proceeding on the rioting charge. (ECF Nos. 70 at 4-5, 10-11; 92 at 14.)

9    The Court agrees with Judge Denney that triable issues of material fact exist as to

10   whether Plaintiff knowingly waived his right to a 24-hour waiting period before attending a

11   disciplinary hearing on his amended rioting charge. (ECF No. 87 at 24.) According to

12   Plaintiff, just before commencing the full disciplinary hearing on November 21, 2019,

13   Homan informed Plaintiff that the disciplinary committee amended his charge a second

14   time—this time from battery to a "more fitting" rioting charge.[8] (ECF Nos. 70 at 4; 74 at

15   0:21-0:27; 80 at 28.) Within the first minute of the disciplinary hearing, Homan told Plaintiff

16   that this rioting charge, like the battery charge, is a major offense that "still comes with

17   Category A sanctions" and requires a reading of Plaintiff's *Miranda* rights before

18   proceeding. (ECF No. 74 at 0:28-0:43.) Homan then read Plaintiff's *Miranda* rights, after

19   which Plaintiff indicated he would answer Homan's questions at the hearing without an

20   attorney present. (*Id.* at 0:50-1:19.) Plaintiff also told Homan that he would dispute the

21   amended rioting charge and plead not guilty. (*Id.* at 2:33-2:38.)

22   Plaintiff maintains that he had appeared for the hearing with a prepared defense for

23   his murder charge—the original charge—due to Moskoff's previous failure to notify Plaintiff

24   of the first amendment in charges. (ECF No. 68-5 at 7.) Homan then asked Plaintiff off the

25

26   _____

27   [8]Plaintiff asserts that Homan changed Plaintiff's charge to a rioting charge as a "reduced" charge. (ECF No. 80 at 6.) During the hearing, however, Homan did not describe the rioting charge as such, and clarified that the rioting and battery charges are "overall

28   about the same," but differ in the maximum amount of disciplinary "points" that Plaintiff would receive if found guilty. (ECF No. 74 at 0:28-0:43, 2:11-2:30.)

record if he wanted to delay the hearing to prepare a defense for his now-amended rioting charge. (ECF Nos. 62-5 at 7; 74 at 13:42-13:47) Homan allegedly told Plaintiff he could either stay for the hearing or "choose to not be present." (ECF Nos. 68-5 at 7-8; 80 at 7.) According to Homan, Plaintiff "continued giving information and everything," which Homan interpreted as an "agreement" to proceed with the hearing and to "get it done" that same day. (ECF Nos. 74 at 13:26-13:58; 80 at 7.) In other words, Homan interpreted Plaintiff's off-the-record statements and actions as an implied waiver of his right to the 24-hour waiting period for a disciplinary hearing on the amended rioting charge. Near the end of the disciplinary hearing, Plaintiff voiced confusion about the timing of the hearing, stating he had thought they would delay the hearing on the rioting charge until the following day. (ECF No. 74 at 13:44-13:48.) Despite this confusion, the hearing proceeded and ended with Homan and the disciplinary committee finding Plaintiff guilty of rioting. (ECF No. 74 at 2:38-10:15.)

After reviewing the record de novo, the Court finds it is disputed whether Plaintiff knowingly waived his 24-hour notice for a disciplinary hearing on the amended rioting charge. To be sure, Homan informed Plaintiff during the disciplinary hearing that Plaintiff had previously waived his 24-hour notice earlier that day. (ECF No. 74 at 13:44-14:27.) However, this alleged conversation occurred "before [Homan and Plaintiff] were on air," and Plaintiff later voiced confusion on the record as to whether he had thought his hearing on the rioting charge would occur that day or the following day. (*Id.* at 13:44-13:48.) Because questions exist as to whether Homan improperly concluded that Plaintiff had waived his right to a 24-hour notice, thus limiting Plaintiff's ability to defend against the rioting charge, *see Wolff*, 418 U.S. at 564, the Court overrules Defendants' Objection, accepts Judge Denney's recommendation, and denies both Motions on this claim.

### 4. Due Process: Reubart & Gittere

Defendants next object to Judge Denney's recommendation to deny both Motions on Plaintiff's claim against Reubart and Gittere, based on their alleged decision to confine Plaintiff in Administrative Segregation after his disciplinary hearing and appeal. (ECF No.

87 at 30.) As with previous objections, the basis of this objection to this recommendation is far from clear. Defendants generally appear to argue that "prisoner[s] have no liberty interest in their security classification status," and that even if Plaintiff had such a liberty interest, he cannot prove a due process violation. (ECF No. 92 at 12-13.) For the reasons below, the Court overrules Defendants' Objection.

First, the Court agrees with Judge Denney that denial is warranted here because "neither side addresses whether Plaintiff's confinement in the BMU rises to the level of an 'atypical and significant hardship'"—*i.e.*, whether a change in the conditions of Plaintiff's confinement rises to the level of a protected, state-created liberty interest.[9] (ECF No. 87 at 29.) *See also Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (recognizing that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Sandin v. Conner*, 515 U.S. 472, 483-85 (1995) (recognizing "that States may under certain circumstances create liberty interests which are protected by the Due Process Clause," and that such interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") (citations omitted); *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (recognizing *Sandin* and its progeny's holding that "to find a violation of a state-created liberty interest the hardship imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life'") (citation omitted); *Hewitt v. Helms*, 459 U.S. 460, 476, 477 n.9 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (outlining "an informal, nonadversary" review of the evidence justifying the prison officials' decision to segregate a prisoner, and thereafter (as dicta)

---

[9]In the SAC, Plaintiff characterizes his due process claim as constituting "procedural defects" and an "atypical significant hardship." (ECF No. 45 at 9.)

1  requiring officials to periodically review the prisoner's initial placement in segregated
2  housing).

3  While Defendants do generally cite the "atypical and significant hardship" standard
4  once in their Motion, they do not explain at all why Plaintiff's confinement in the BMU does
5  not rise to an atypical and significant hardship and thus does not violate Plaintiff's due
6  process rights. (ECF No. 70 at 9.) Instead, Defendants argue that Plaintiff's claim fails
7  because neither Reubart nor Gittere personally participated in the alleged due process
8  deprivation. (*Id.* at 13-15.) The Court agrees with Judge Denney that both sides' failures
9  to cite the proper standard, alone, warrants denial of both Motions. (ECF No. 87 at 29.)

10  Defendants alternatively argue that, even assuming Plaintiff's placement in the
11  BMU implicates a liberty interest, Plaintiff's due process rights were not violated because
12  Plaintiff "chose to remain in administrative segregation due to his job status" as a porter.[10]
13  (ECF No. 70 at 21.) Since being placed in Administrative Segregation in January 2020,
14  Plaintiff requested to be re-classified to general population at least three times—in May,
15  June, and July 2021. (ECF No. 70-3 at 3-5.) ESP officials deferred each request by 30
16  days, due to Plaintiff's job as a unit porter. (*Id.*) The Court agrees with Judge Denney that,
17  "[e]ven if Plaintiff requested to stay in [the BMU] for three months in May to July 2021,
18  Defendants do not provide evidence that he received due process [through periodic
19  classification review] for the remainder of the time he has been in the BMU."[11] (ECF No.
20  87 at 30.) *See also Hewitt*, 459 U.S. at 477 n.9. This provides a second basis to deny both

22  [10]As Judge Denney notes, Defendants raised this argument in relation to Plaintiff's
equal protection claim. (ECF Nos. 87 at 30; 70 at 21.) Defendants also argue—albeit for
23  their qualified immunity defense in their Objection—that Plaintiff received due process
through classification reviews while held in segregation. (ECF No. 92 at 5.) Even assuming
24  Plaintiff's pre-May 2021 case notes truly reflect such reviews, the multiple and inconsistent
gaps between record entries—including two six-month periods without reviews—could
25  lead a reasonable juror to conclude that Plaintiff did not receive due process in the form
of periodic classification reviews while held in Administrative Segregation. (ECF Nos. 61-
26  2 at 54; 88 at 12; 92 at 5.) *See also Hewitt*, 459 U.S. at 477 n.9. The Court thus overrules
Defendants' Objection and denies Defendants' Motion on this additional basis.

28  [11]Defendant Cooke stated in response to Plaintiff's interrogatories that as of June
14, 2022, Plaintiff had remained segregated from the general population. (ECF No. 80-1
at 24.)

1  Motions.

2        Lastly, Judge Denney rejects Defendants' argument that Plaintiff's claim fails

3  because no evidence shows that Reubart personally participated in—and is thus not liable

4  under Section 1983 for—Plaintiff's placement in Administrative Segregation. (*Id.*) *See also*

5  *Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (recognizing that an inmate plaintiff

6  suing under Section 1983 "must show that each defendant personally played a role in

7  violating the Constitution," and that "[a]n official is liable under § 1983 only if culpable

8  action, or inaction, is directly attributed to them.") (citations and quotation marks omitted);

9  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under

10  color of state law to be liable under section 1983 there must be a showing of personal

11  participation in the alleged rights deprivation: there is no respondeat superior liability under

12  section 1983.") (citations omitted).

13        The Court agrees with Judge Denney. Defendants first misconstrue Plaintiff's claim

14  against Reubart and Gittere as one based on Plaintiff's "November [2019] disciplinary

15  hearing," instead of Plaintiff's placement in the BMU without due process. (*See* ECF No.

16  70 at 14-15.) Second, Defendants' own evidence contradicts their argument. Reubart

17  states in his declaration that shortly after the January 2020 riot incident, both the warden

18  (Gittere) and associate wardens (including Reubart), made the decision "to place

19  Asian/Pacific Islander inmates in Administrative Segregation for their own safety and for

20  the safety and security of the institution." (ECF No. 68-7 at 3.) Further, Defendants offer

21  no evidence showing that Reubart did not participate in decisions about Plaintiff's

22  confinement in the BMU after placing him there in January 2020. Because a reasonable

23  juror could conclude that Reubart participated in Plaintiff's confinement in the BMU without

24  giving him due process, the Court overrules Defendant's Objection, accepts the R&R, and

25  denies both Motions on this claim.

26             **5.**    **Due Process: Cooke**

27        As for Plaintiff's due process claim against Cooke, Plaintiff objects to Judge

28  Denney's finding that Plaintiff failed to establish that Cooke, either as a records staff

1    supervisor or casework specialist, "had any involvement in the decision to segregate the

2    inmates." (ECF No. 87 at 31-32.) *See also Hines*, 914 F.3d at 1228; *Jones*, 297 F.3d at

3    934. Plaintiff appears to base this claim on his prolonged placement in the BMU without

4    due process, *i.e.*, receiving periodic classification status reviews. Specifically, Plaintiff

5    argues that Cooke personally participated in Plaintiff's extended confinement in the BMU

6    because she signed the forms deferring Plaintiff's requests for re-classification back to

7    general population from May to July 2021. (ECF No. 88 at 2.) Thus, Plaintiff argues, Cooke

8    "ha[d] final determination of [Plaintiff's] housing and directly aided the wardens in . . .

9    keeping [Plaintiff] in segregation." (*Id.* at 3.)

10        The Court finds Plaintiff's argument persuasive and thus disagrees with Judge

11   Denney's conclusion that "Plaintiff presents no evidence that Cooke personally

12   participated in . . . the alleged failure to review [Plaintiff's] classification status." (ECF No.

13   87 at 32.) To be sure, the Court agrees that Plaintiff presents no evidence demonstrating

14   Cooke's personal participation in (1) Plaintiff's disciplinary hearing, (2) disciplinary appeal,

15   or (3) the *initial* decision to segregate all Asian/Pacific-Islander inmates from the general

16   population. (*Id.*) However, Plaintiff correctly points out that a signature with the last name

17   "Cooke" appears on each form deferring Plaintiff's classification status review by 30 days

18   in May, June, and July 2021. (ECF No. 70-3 at 3-5.) This signature, along with signatures

19   of at least one associate warden and a "Unit CCS," appears above a caption that reads

20   "CCS III"—an abbreviation that a reasonable juror can infer to mean Correctional

21   Caseworker III. (*Id.*) A reasonable juror can also conclude that this signature belongs to

22   Cooke, since she worked as a Correctional Casework Specialist III from 2019 to 2021.

23   (ECF No. 80-1 at 23-24.) Cooke also stated that "[a]s of June 14, 2022, [Plaintiff] has not

24   returned to General Population . . . based on his recent disciplinary actions. It was a

25   decision that was made and carried out by multiple staff including wardens, caseworkers,

26   and custody staff." (*Id.* at 24.)

27        For these reasons, viewing the evidence in the light most favorable to Plaintiff, a

28   reasonable juror can conclude that Cooke personally participated in Plaintiff's alleged due

1  process violation to the extent she deferred periodic classification status reviews from May

2  to July 2021 or otherwise failed to perform such reviews. *See Hewitt*, 459 U.S. at 477 n.9.

3  The Court sustains Plaintiff's Objection and rejects Judge Denney's recommendation that

4  the Court grant summary judgment in Cooke's favor. Accordingly, the Court denies

5  Defendants' Motion on Plaintiff's due process claim against Cooke.

### 6.   Due Process: Williams

7  Plaintiff objects to Judge Denney's recommendation to grant Defendants' Motion

8  on the due process claim against Williams, based on his alleged denial of Plaintiff's

9  restitution hearing and independent review of his restitution charge. (ECF No. 87 at 34.)

10  Plaintiff largely rehashes his previous arguments in opposition to Defendants' Motion,

11  contending that Williams refused to sufficiently investigate Plaintiff's dispute of the

12  attempted murder-related restitution imposed on him.[12] (ECF Nos. 80 at 15; 88 at 3-4.)

13  For the reasons below, the Court will overrule Plaintiff's Objection.

14  Plaintiff alleges in the SAC that Williams "denied [Plaintiff] a restitution hearing or

15  independent review of restitution for improperly assessed restitution." (ECF No. 45 at 11-

16  12.) Defendants first argue that Williams is entitled to summary judgment because there

17  is no evidence showing that Williams participated in Plaintiff's disciplinary hearing, appeal,

18  or initial assessment of restitution. (ECF No. 70 at 15.) Defendants alternatively contend

19  that Plaintiff received sufficient due process on the restitution issue because he "already

20  appealed the disciplinary findings through the proper grievance process." (*Id.*) Plaintiff

21  counters that Defendants fail to address the crux of Plaintiff's claim against Williams—that

22  Plaintiff received "sanctions that included monetary restitution from the attempted murder

23

24  _____

25  [12]As Judge Denney points out, Plaintiff does not dispute the restitution sanction for
the MJ27 riot guilt determination; instead, he disputes the additional split restitution
imposed in relation to the initial events during the October 2019 incident creating liability

26  for *attempted murder* charges for various inmates. (ECF Nos. 70-7 at 42; 87 at 33.) In
other words, Plaintiff disputes Defendants' split restitution sanction as excessive because

27  it related to the damage incurred during the *entire* October 2019 incident—*i.e.*, both the
attempted murder and subsequent rioting portions—not just the events giving rise to

28  Plaintiff's rioting charge.

1  video evidence . . . in addition to the rioting restitution," even though ESP's disciplinary
2  committee found Plaintiff guilty of only rioting. (ECF No. 77 at 3.)[13]

3       While no evidence shows that Williams participated in Plaintiff's disciplinary
4  proceedings, including the disciplinary appeal, Williams did respond to a separate
5  grievance in which Plaintiff disputed his restitution charges for medical injuries and
6  expenses incurred before the riot during the October 13 incident—events that formed the
7  basis of Plaintiff's original attempted murder charge. (ECF No. 70-7 at 43-44.) After
8  Plaintiff's grievance was denied at the informal and first levels, Williams responded at the
9  second level. (*Id.* at 42-44.) Williams reiterated that Plaintiff was "originally charged with
10  MJ3-Battery (not MJ16-Murder) for [Plaintiff's] involvement in the subject disturbance." (*Id.*
11  at 44.) And "[a]t the Disciplinary Hearing level, that charge was amended (not reduced) to
12  MJ27-Rioting," which is a "Class A offense" for which restitution is an "authorized
13  sanction," Williams explained. (*Id.*) After reviewing Plaintiff's disciplinary record, Williams
14  upheld Plaintiff's split restitution charges for the entire October 13, 2019 incident and
15  denied Plaintiff's grievance:

16      Based on the findings above, I note that you were properly charged, afforded
17  due process, found guilty of MJ27-Rioting, and subsequently sanctioned
    with, among other appropriate sanctions, split restitution related to the losses
    and damage incurred by yourself and others during the subject disturbance.
18      By definition, a riot is a group related disturbance that causes significant
    injuries and/or property damage. By engaging in unauthorized criminal
19      behavior during a riot, you become responsible for the damages caused by
    yourself and others during the entire disturbance, not just a portion of it.
20  (*Id.*)

21       The Court agrees with Judge Denney that Plaintiff received due process with
22  respect to Plaintiff's restitution dispute. Defendants informed Plaintiff of the punishment
23  imposed upon him, including "split restitution," for his Class A offense (rioting) guilty
24  determination during the disciplinary hearing. (ECF Nos. 74 at 9:10-9:32; 70-2 at 9.) In the
25  disciplinary hearing, Homan explained to Plaintiff that, among other sanctions, he is
26  charged with "split restitution between [Plaintiff] and everybody involved in the riot incident

27

28       [13]Though not seeking summary judgment on the claim against Williams, Plaintiff raises this counterargument in his reply brief in support of his Motion (ECF No. 77).

itself"–a statement that may have led Plaintiff to believe he would only have restitution deducted for the subsequent rioting portion of the October 13 incident. (ECF No. 74 at 9:25-9:32.)

Plaintiff then properly filed a separate grievance disputing his restitution charges— as required under the Regulations—through all three grievance levels. (ECF No. 70-7 at 42-44; *see also* ECF No. 61 at 85 ("Due process on a restitution issue may be achieved by giving the inmate notice and details of the deduction, with an opportunity to be appealed through the inmate grievance process.").) Although ESP officials, including Williams, denied Plaintiff's restitution grievance at all three levels, Williams reviewed and addressed the merits of Plaintiff's grievance at the second level and explained to Plaintiff why being found guilty of rioting authorizes split restitution for damages incurred during the entire October 13 incident, not just the subsequent rioting portion. (*Id.* at 43-44.) For these reasons, the Court finds that Plaintiff received due process on his restitution issue. *See Dease v. MacArthur*, Case No. 3:05-cv-00294-LRH-VPC, 2007 WL 1827135, at *8-11 (D. Nev. June 21, 2007) (finding that an inmate plaintiff "was offered sufficient due process" to challenge his restitution charges in part because plaintiff "had three opportunities to be heard on these issues"—two of which the plaintiff had voluntarily waived, "and was heard on the merits during his third opportunity"). Accordingly, the Court overrules Plaintiff's Objection, accepts Judge Denney's recommendation, and grants summary judgment in Williams's favor.

### 7.    Qualified Immunity (Due Process)

Defendants object to Judge Denney's recommendation to deny their Motion on their qualified immunity defense.[14] (ECF No. 92 at 4, 15.) Judge Denney concludes that they

---

[14]Judge Denney does not explicitly find that Defendants violated a constitutional right. However, Judge Denney implicitly makes such a finding when he concludes that Plaintiff's alleged due process rights, as violated by Defendants, would have been clearly established at the time of the events at issue. (ECF No. 87 at 41.) *See also Gordon v. Cnty. of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) ("In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional *(fn. cont…)*

1    "are not entitled to qualified immunity with respect to the due process claims [he] has

2    recommended proceed to trial"—namely, Plaintiff's claims against (1) Moskoff for his

3    alleged failure to serve an amended Notice of Charges and conduct a preliminary hearing

4    on the amended battery charge, (2) Homan for the alleged lack of 24-hour notice for his

5    amended charge before proceeding with the full disciplinary hearing, and (3) Gittere and

6    Reubart with respect to Plaintiff's placement in Administrative Segregation.[15] (ECF No. 87

7    at 41.)

8          Defendants argue that, even if Moskoff, Homan, Gittere, and Reubart violated

9    Plaintiff's due process rights, they are still entitled to qualified immunity because Plaintiff

10   fails to meet his burden of establishing that the alleged rights violated were clearly

11   established. (ECF No. 92 at 15; *see also* ECF No. 70 at 22-24.) Specifically, they argue,

12   Plaintiff "cites no authority that due process is required without a liberty interest or that an

13   inmate cannot impliedly waive the advanced notice requirement." (*Id.*)

14         To start, taking the facts "in the light most favorable to the party asserting the injury,"

15   the Court finds that the facts alleged show that Moskoff, Homan, Reubart, Gittere, and

16   Cooke's acts violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

17   *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

18   (holding that the two-step "*Saucier* procedure should not be regarded as an inflexible

19   requirement," and that judges instead "should be permitted to exercise their sound

20   discretion in deciding which of the two prongs of the qualified immunity analysis should be

21   addressed first" depending on the circumstances of the case); *see also LSO, Ltd. v. Stroh*,

22   205 F.3d 1146, 1158 (9th Cir. 2000) ("Our goal is to define the contours of the right

23   allegedly violated in a way that expresses what is really being litigated."). First, when

24   viewing the facts in the light most favorable to Plaintiff, the Court finds that Moskoff's

25

26   right and (2) the right was clearly established at the time of the alleged misconduct.")
     (citation omitted).

27

28         [15]Because the Court sustains Plaintiff's Objection as to the due process claim
     against Cooke, the will also determine whether Cooke is entitled to summary judgment on
     qualified immunity grounds.

failures to (1) serve an amended Notice of Charges and conduct a preliminary hearing and (2) offer any explanation for limiting Plaintiff's defense violated Plaintiff's due process rights. S*ee Wolff*, 418 U.S. at 564-65 (holding in part that "written notice of the charges must be given to the [inmate] in order to inform him of the charges and to enable him to marshal the facts and prepare a defense" for "a brief period of time after the notice, no less than 24 hours"); *see also Koenig*, 971 F.2d at 423; *Ponte*, 471 U.S. at 497; *Serrano*, 345 F.3d at 1079-80. Similarly, the Court finds that Homan's denial of the 24-hour notice for Plaintiff to defend himself against the amended rioting charge also violated Plaintiff's due process rights. Gittere, Reubart, and Cooke also violated Plaintiff's due process rights while in Administrative Segregation by failing to conduct periodic classification reviews over a confinement period of more than two years. *See Hewitt*, 459 U.S. at 476, 477 n.9.

Next, the Court considers whether the due process rights that Moskoff, Homan, Reubart, Gittere, and Cooke violated were "clearly established at the time of the events at issue." *Monzon v. City of Murrieta*, 978 F. 3d 1150, 1156 (9th Cir. 2020) (citation omitted). "A constitutional right is clearly established if every reasonable official would have understood that what he is doing violates that right at the time of his conduct." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018-19 (9th Cir. 2020) (citation and quotation marks omitted); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) ("[Qualified i]mmunity protects all but the plainly incompetent or those who knowingly violate the law.") (citation and quotation marks omitted). "For a constitutional right to be clearly established, a court must define the right at issue with specificity and not at a high level of generality." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (citations, quotation marks, and alterations omitted). Although the Court "do[es] 'not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam)).

As Defendants note, Plaintiff does not cite controlling precedent that "'squarely governs' the specific facts at issue." *Kisela*, 138 S.Ct. at 1153 (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (per curiam)). And the Court recognizes that, generally, "[t]he plaintiff 'bears the burden of showing that the rights allegedly violated were clearly established.'" *Gordon*, 6 F.4th at 969 (quoting *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)). "However, because resolving whether the asserted federal right was clearly established presents a pure question of law, [the Court] draws on [its] 'full knowledge' of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Id.* (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)). Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

### a.    Moskoff

While Plaintiff does not point to controlling precedent that squarely governs the specific facts at issue here, summary judgment on the qualified immunity issue remains inappropriate. As discussed above, there is circumstantial evidence that tends to discredit Moskoff's account of what transpired on November 9, 2019, and that could give a reasonable jury pause. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1079-81 (9th Cir. 2014) (reversing grant of summary judgment for certain defendant police officers due to "curious and material factual discrepancies" arising from "circumstantial evidence that could give a reasonable jury pause"). Critically, Defendants do not explain why neither Moskoff nor Plaintiff signed the amended Notice of Charges and the preliminary hearing summary form, even though their signatures are required on both forms under the Regulations. Because such "curious and material factual discrepancies" could lead a reasonable jury to disbelieve Moskoff's version of events and "reach the opposite conclusion" that he violated clearly established law, *id.; see also Wolff*, 418 U.S. at 564-65, a determination that Moskoff is entitled to qualified immunity is premature at this stage.

1    Viewing the facts in the light most favorable to Plaintiff, the material facts at issue here

2    remain in dispute. Accordingly, Moskoff is not entitled to summary judgment on his

3    qualified immunity defense, and the Court overrules Defendants' Objection, accepts Judge

4    Denney's recommendation, and denies Defendants' Motion on this ground.[16]

5                              **b.    Homan**

6         Likewise, the Court agrees with Judge Denney that Homan is also not entitled to

7    qualified immunity because it was clearly established long before 2019 that Plaintiff had a

8    due process right to a written statement and 24-hour notice to prepare a defense on his

9    second-time-amended rioting charge. *See Wolff*, 418 U.S. at 564-65. Defendants do not

10   dispute that such a due process right is clearly established for qualified immunity

11   purposes. Instead, they argue that Plaintiff fails to meet his burden of establishing that the

12   alleged right was clearly established because he "cites no authority that due process is

13   required without a liberty interest." (ECF No. 92 at 15.) While plaintiffs normally bear the

14   burden of establishing a clearly established right, Defendants' argument is shortsighted

15   and ignores the fact that the clearly-established-right inquiry is "a pure question of law"

16   that allows the Court to draw on its "'full knowledge' of relevant precedent rather than

17   restricting [its] review to cases identified by the plaintiff." *Gordon*, 6 F.4th at 969 (citing

18   *Elder*, 510 U.S. at 516).

19                          **c.    Reubart, Gittere & Cooke**

20        Finally, the Court finds that Reubart, Gittere, and Cooke's actions, taken in the light

21   most favorable to Plaintiff, violated Plaintiff's clearly established due process right to

22   periodic classification status reviews while in Administrative Segregation. Again, whether

23   Plaintiff cites controlling precedent does not prevent the Court from drawing from its full

24

25

26   _____

27        [16]The Court alternatively finds that Moskoff's qualified immunity defense fails
     because his actions violated Plaintiff's due process right to prepare his defense in a
     disciplinary proceeding, a right that was clearly established before November 9, 2019—
28   the time of Moskoff's actions at issue. *See Wolff*, 418 U.S. at 564-65; *Koenig*, 971 F.2d at
     423.

knowledge of relevant precedent to find that a clearly established right has been violated. (*See id.*) *See also id.*; *Hewitt*, 459 U.S. at 477 n.9.

For these reasons, the Court finds that Moskoff, Homan, Reubart, Gittere, and Cooke are not entitled to summary judgment on their qualified immunity defenses. The Court agrees with Judge Denney that all four Defendants violated Plaintiff's clearly established due process rights when viewing the evidence in the light most favorable to Plaintiff. Accordingly, the Court overrules Defendants' Objection, adopts the R&R, and denies Defendants' Motion on qualified immunity grounds.

### 8.      Eighth Amendment Failure to Protect

Plaintiff objects to Judge Denney's recommendation to grant Defendants' Motion on the Eighth Amendment failure-to-protect claim. (ECF No. 87 at 36.) This claim is based on allegations that ESP's only crowd-control measure—a newer type of tear gas as a cost-saving measure—was ineffective.[17] (ECF Nos. 45 at 13; 87 at 34.)

Judge Denney explains that Defendants are entitled to summary judgment because "Plaintiff presents *no evidence* to support his assertion that the [Oleoresin Capsicum, or "OC"] tear gas, that had been utilized for some three years prior to this incident, was ineffective or less effective than the [2-Chlorobenzylidenemalononitrile, or "CS"] tear gas previously used by the prison. Nor does he present any evidence to substantiate his claim that the switch was made to the O/C tear gas due to cost concerns." (ECF No. 87 at 36.) The Court agrees with Judge Denney.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, an incarcerated plaintiff must establish that prison

---

[17]In his Objection, Plaintiff repeats his allegation that the tear gas used during the October 13 incident was ineffective. (ECF No. 88 at 4.) Plaintiff also asserts that Gittere and Dzurenda are liable in part because "ESP correctional staff didn't enter the unit to stop or limit violence, despite having 25 personnel present. They also kept the only exit closed." (*Id.*) Regardless, Gittere and Dzurenda are still entitled to summary judgment because this claim is based on allegations that only relate to Defendants' choice and use of tear gas during the incident, not other crowd-control tactics. (*See* ECF No. 45 at 13.)

officials were "deliberately indifferen[t]" to serious threats to his safety. *Id.* at 834. Under this deliberate indifference standard, both an objective component and a subjective component must be met to find a violation of the Eighth Amendment. *See id.* To demonstrate that a prison official was deliberately indifferent to a serious threat to inmate safety, the inmate must show that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Farmer*, 511 U.S. at 835). In other words, "[l]iability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 847).

Defendants present evidence showing that, contrary to Plaintiff's allegations, they did not intentionally switch to an ineffective tear gas to save money. Gittere declares that NDOC prisons previously used CS tear gas as a riot-control chemical agent until 2016, when NDOC modified its Regulations. (ECF No. 70-9 at 3.) After 2016, Gittere explains, "NDOC started using O/C riot control tear gas . . . because it had less deleterious effects on individuals than C/S"; "the change from C/S to O/C riot control tear gas was not made due to any cost concerns" since the cost of a cannister of each type of tear gas "has been roughly the same." (*Id.*) Further, Gittere states that he was not personally involved in the 2016 decision to change the relevant Regulation. (*Id.*) Nor was he involved in the decision to change the type of tear gas used in NDOC prisons. (*Id.*)

In turn, however, Plaintiff offers no evidence supporting his allegations that: (1) the OC tear gas was either ineffective or less effective than the previously used CS tear gas and thus created a serious threat to inmate safety; (2) NDOC switched tear gas types due to cost concerns; or (3) even if the tear gas had posed a substantial risk of harm to inmates,

that Gittere or Dzurenda knew of and intentionally disregarded this risk. (*See generally* ECF Nos. 80, 88.) *See also Farmer*, 511 U.S. at 837.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have established that no triable issue of material fact exists as to Plaintiff's Eighth Amendment failure-to-protect claim. Accordingly, the Court overrules Plaintiff's Objection, accepts Judge Denney's recommendation, and grants Defendant's Motion on this claim.

### 9.    Fourteenth Amendment Equal Protection

Plaintiff's equal protection claim is based on allegations that Plaintiff and other Asian/Pacific-Islander inmates were placed (and more severely confined) in Administrative Segregation while African American inmates with the same riot sentences were allowed to remain in general population. (ECF No. 45 at 14-15.) Both sides seek summary judgment on this claim. In response to Plaintiff's Motion, and in support of their own Motion, Defendants challenge the equal protection claim on both procedural grounds—raising the exhaustion defense—as well as substantive grounds. (ECF Nos. 68 at 10-14; 70 at 19-22; 85 at 2-3.)

### a.    Exhaustion

Defendants first argue that Plaintiff failed to properly exhaust his equal protection claim. (ECF Nos. 68 at 10-12; 70 at 19-20.) In response, Plaintiff contends that Defendants' exhaustion defense fails because they rendered NDOC's grievance process "unavailable" to him with respect to this claim. (ECF Nos. 77 at 6-7; 80 at 19-20.) Having reviewed the record de novo, the Court agrees with Judge Denney that the exhaustion defense fails because Plaintiff sufficiently exhausted all "available" administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires inmates to first exhaust the administrative remedies available to them prior to filing an action in court. *See* 42 U.S.C. § 1997e(a). Under the PLRA, exhaustion is mandatory. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). While PLRA "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S.

81, 93 (2006), the grievance process that a prison has put in place determines whether an incarcerated plaintiff has complied with the exhaustion requirement. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Bock*, 549 U.S. at 204, 216). Once a defendant shows the plaintiff failed to exhaust available administrative remedies, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* at 1172 (citing *Hilao v. Est. of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "The ultimate burden of proof," however, "remains with the defendant." *Id.*

An inmate's duty to exhaust is limited in that he need only exhaust "available" administrative remedies; he "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Relevant to this action, an administrative remedy is "unavailable" in at least two scenarios: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; and (2) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44 (citing *Booth*, 532 U.S. at 736); *see also Woodford*, 548 U.S. at 102.

AR 740 outlines NDOC's grievance process and governs exhaustion requirements for inmates. Under AR 740, an inmate must file their grievance through three levels— informal, first-level, and second-level grievances—to complete the administrative grievance process. (*See* ECF No. 70-8.) Among several other limitations, an inmate may not file grievances containing "[s]pecific claims or incidents previously filed"; doing so is considered "abuse of the inmate grievance procedure." (*Id.* at 7.) AR 740 also governs

1   disciplinary appeals—a process in which an inmate must first "file an Informal Grievance

2   form that states 'for tracking purposes' when an issue goes directly to the Warden (first

3   level)" along with a "First-Level Grievance and attachments." (ECF Nos. 61 at 78; 70-8 at

4   12.) "If an inmate does not agree with the Warden's response to the Disciplinary Appeal

5   (First Level Grievance), he/she may appeal to the Second Level via the . . . process

6   outlined in AR 740." (ECF No. 61 at 78.)

7           Here, and as Plaintiff asserts, the Court's exhaustion analysis hinges on whether

8   Plaintiff had an "available" administrative remedy to exhaust. The Court agrees with Judge

9   Denney that Plaintiff did not have administrative remedies available to him. On March 9,

10  2020, Plaintiff filed an informal grievance (No. 2006-30-98255), in which he asserted

11  "racial discrimination" due to "preferential treatment" of the "Crips" gang members over

12  "Type 4 (Asian/Islander)" inmates. (ECF No. 70-4 at 3-4.) That same day, Plaintiff received

13  a response from ESP Associate Warden David Drummond in the form of an "improper

14  grievance memo." (*Id.* at 2-3.) Drummond rejected Plaintiff's grievance, explaining that

15  Plaintiff had improperly submitted the grievance because it "was not placed directly in the

16  Grievance Box." (*Id.* at 2.) "Re-submit," Drummond instructed Plaintiff. (*Id.*)

17          On March 24, 2020, Plaintiff filed a second informal grievance (No. 2006-30-

18  99160), asserting nearly identical allegations as he had raised in the March 9 grievance.

19  (ECF No. 70-5 at 3-4.) Again, Plaintiff lamented "racial discrimination" due to "preferential

20  treatment" of the "Crips" members over "Type 4" inmates in terms of confinement

21  conditions. (*Id.*) Three days later, Drummond again issued an improper grievance memo,

22  rejecting Plaintiff's grievance—this time as an "abuse of [the] inmate grievance procedure"

23  under AR 740.04. (ECF Nos. 70-5 at 2; 70-8 at 7.) Drummond based his rejection on

24  Plaintiff having raised "[s]pecific claims or incidents previously filed by the same inmate—

25  2006.30.9855." (ECF No. 70-5 at 2.)

26          The Court agrees with Judge Denney that Defendants rendered NDOC's grievance

27  process unavailable—a "simple dead end"—thwarting Plaintiff's good-faith efforts to

28  exhaust. *Ross*, 578 U.S. at 643; *see also Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir.

2021) ("[W]here inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to process the grievance, we have deemed the exhaustion requirement satisfied.") (citations omitted). In sum, the evidence shows that: (1) Drummond rejected Plaintiff's first informal grievance—asserting racially discriminatory segregation—as improper for not placing it directly in the grievance box; (2) Plaintiff thereafter resubmitted his grievance 15 days later—with nearly identical allegations—as instructed; and (3) Drummond rejected this resubmitted grievance, but this time on the ground that Plaintiff had already raised this issue in the first informal grievance, which Drummond had previously rejected and told Plaintiff to resubmit. *See Albino*, 747 F.3d at 1166, 1170-71.

Because Plaintiff "need not exhaust unavailable" administrative remedies, *Ross*, 578 U.S. at 642, the Court will (1) overrule Defendants' Objection, (2) accept Judge Denney's recommendation, and (3) only deny Defendants' Motion on exhaustion grounds.

### b.    Merits Discussion

Defendants also object to Judge Denney's recommendation on the merits of Plaintiff's equal protection claim. (ECF Nos. 87 at 39; 92 at 5-6, 15-16.) Judge Denney finds that two factual disputes preclude summary judgment: (1) "whether that compelling interest justified the continued segregation of the inmates" and (2) "whether the [continued] segregation was narrowly tailored to meet that interest." (*Id.* at 39.) Specifically, Judge Denney cites "conflicting evidence in the record" as to whether racial segregation was continuously ongoing since January 2020, that is, whether Asian/Pacific-Islander inmates were allowed to reintegrate into general population at any point. (*Id.*) The Court again agrees with Judge Denney.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff*, 418 U.S. at 556 (citation omitted). "Moreover, racial segregation . . . is unconstitutional within prisons, save for the 'necessities of prison security and discipline.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (quoting *Lee v. Washington*, 390 U.S. 333, 334 (1968)). Although "the role that deference

1   to prison officials plays in prison administration" is well-established, "the Supreme Court
2   [has been] unequivocal that strict scrutiny is the proper standard of review for an equal
3   protection challenge to a race-based prison policy." *Harrington v. Scribner*, 785 F.3d 1299,
4   1305 (9th Cir. 2015) (citing *Johnson v. California*, 543 U.S. 499, 515 (2005)); *see also*
5   *Beto*, 405 U.S. at 321. Because "racial classifications threaten to stigmatize individuals by
6   reason of their membership in a racial group and to incite racial hostility," "racial
7   classifications in prisons are immediately suspect and subject to strict scrutiny."
8   *Harrington*, 785 F.3d at 1306 (citations and quotation marks omitted). Strict scrutiny
9   "requires the government to prove that the measures are narrowly tailored to further a
10  compelling government interest." *Id.* (citation omitted).

11         Strict scrutiny applies and "is no less important" "where prison officials cite racial
12  violence as the reason for their [race-based] policy." *Johnson*, 543 U.S. at 507. Yet "[s]trict
13  scrutiny does not preclude the ability of prison officials to address the compelling interest
14  in prison safety." *Id.* at 514. In *Johnson*, the Supreme Court reaffirmed its previous holding
15  that the "necessities of prison security and discipline . . . are a compelling government
16  interest justifying only those uses of race that are narrowly tailored to address those
17  necessities." *Id.* at 512 (citations and quotation marks omitted). However, prison officials
18  citing prison safety as a reason for racial classifications still must "demonstrate that any
19  race-based policies are narrowly tailored to that end." *Id.* at 514 (citing *Grutter v. Bollinger*,
20  539 U.S. 306, 327 (2003)).

21         With these principles in mind, the Court first finds that Defendants, in arguing "there
22  existed a *rational basis* for any alleged disparate treatment between these two [racial]
23  groups" of inmates, invoke the wrong standard of review for Plaintiff's equal protection
24  claim. (ECF No. 70 at 21 (emphasis added).) *See also id.* at 515 (holding that "strict
25  scrutiny is the proper standard of review"). Thus, the Court will follow Judge Denney's
26  recommendation to apply strict scrutiny here, and will consider whether Defendants' racial
27  segregation measures "are narrowly tailored to further a compelling government interest."
28  *Harrington*, 785 F.3d at 1306 (citation omitted).

1   Upon de novo review, the Court concludes that Defendants fail to meet their

2   burden to establish that their continued racial segregation measures are narrowly tailored

3   to further the compelling government interest of prison security.[18] It is undisputed that

4   Defendants intentionally segregated ESP inmates by race after the riot incidents in

5   October 2019 and January 2020. And Defendants argue that "institutional safety and

6   security"—specifically for Plaintiff and other Asian/Pacific-Islander inmates, who were far

7   outnumbered by African American inmates—justified racial segregation between the two

8   racial groups since January 2020. (ECF Nos. 70 at 21; 92 at 6.)

9   Even assuming that Defendants' racial classification between ESP inmates was

10  benevolent, Defendants are not absolved from their burden of persuasion under strict

11  scrutiny review. Defendants do not meet this burden; triable issues of material fact

12  preclude summary judgment for either side. First, questions exist as to how long or how

13  often Defendants have segregated Asian/Pacific-Islander (including Plaintiff) from African

14  American inmates. Defendants appear to concede that Plaintiff has remained in

15  Administrative Segregation since January 2020, and acknowledge having deferred

16  Plaintiff's three consecutive re-classification requests to reintegrate into general

17  population in May through July 2021. (ECF Nos. 70 at 21; 70-3 at 3-5.) It remains unclear,

18  however, whether Plaintiff and other Asian/Pacific-Islander inmates have been

19  continuously segregated within the BMU between January 2020 and June 2022. (ECF No.

20  80-1 at 24 (Defendant Cooke stating in response to interrogatories that "[a]s of June 14,

21  2022, Plaintiff has not returned to General Population").) And although Reubart declares

22  knowing of reports of "ongoing hostilities" between the two racial groups as of January 20,

23  2023, Defendants present no evidence showing when, to whom, or by whom such reports

24  were made. Without more, the Court cannot ascertain whether Defendants' continued

25

26  ———————
    [18]In their Objection, Defendants largely repeat the reasons for which they continued
27  segregating inmates by race (*e.g.*, safety, security, Plaintiff's porter job). (ECF No. 92 at
    5-6.) Though Defendants "respectfully disagree" with Judge Denney's finding under a strict
28  scrutiny standard of review, they fail to explain to the Court why these continued measures
    are narrowly tailored to further a compelling government interest. (*Id.*) This basis, alone,
    justifies overruling Defendants' Objection.

31

1    racial segregation measures—however long they have been in place since January

2    2020—are narrowly tailored to further the compelling government interest of prison

3    security. *See Johnson*, 543 U.S. at 514. Because reasonable minds can differ as to

4    whether Defendants satisfy strict scrutiny review, the Court overrules Defendants'

5    Objection, accepts the R&R, and denies both Motions on this basis.

6    **IV.    CONCLUSION**

7           The Court notes that the parties made several arguments and cited several cases

8    not discussed above. The Court has reviewed these arguments and cases and determines

9    that they do not warrant discussion as they do not affect the outcome of the issues before

10   the Court.

11          In sum, the Court sustains in part, and overrules in part, Plaintiff's Objection to the

12   R&R. The Court sustains Plaintiff's Objection as to Defendant Cooke's personal

13   participation and Section 1983 liability for Plaintiff's procedural due process claim. The

14   Court thus rejects the R&R and denies summary judgment for Defendants on Plaintiff's

15   claim against Cooke. Otherwise, Plaintiff's Objection is overruled. Additionally, the Court

16   overrules Defendants' Objection in its entirety. The Court therefore accepts in part, and

17   rejects in part, Judge Denney's R&R. Accordingly, the Court denies Plaintiff's Motion and

18   grants in part, and denies in part, Defendants' Motion.

19          It is therefore ordered that Plaintiff's objection (ECF No. 88) to the Report and

20   Recommendation of U.S. Magistrate Judge Craig S. Denney is sustained in part and

21   overruled in part, as stated herein.

22          It is further ordered that Defendants' objection (ECF No. 92) to the Report and

23   Recommendation is overruled.

24          It is further ordered that the Report and Recommendation (ECF No. 87) is adopted

25   in part and rejected in part.

26   ///

27   ///

28   ///

32

1      It is further ordered that Plaintiff's motion for partial summary judgment (ECF No.

2  61) is denied.

3      It is further ordered that Defendants' motion for summary judgment (ECF No. 70)

4  is granted in part and denied in part.

5      DATED THIS 9th Day of August 2023.

6

7      _____

8      MIRANDA M. DU
       CHIEF UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28